I'm here to vote on the attorney for Warren B. McConnell, and I'm going to say a lot since I met him last night. I'm Jennifer Powers. I'm the attorney for Powell. How are we doing? My name is David Moon. I represent Pellant-San Alexis Medical Center on this matter. It's on appeal from a November 2010 final order entered in the Circuit Court of Cook County Law Division. This matter is unopposed at this level. However, the plaintiff in the Law Division case was represented by counsel. And the November 2 order was entered after a full briefing and oral argument. This case involves the Health Care Services Lien Act. And you didn't provide a transcript of the proceedings before Judge Maris, did you? I did not. There was no court reporter present. And you didn't do a bystander's report, right? Did not. All right. Because you say she referred to a case or relied on a case, but we really don't have any record of what she actually relied on. That's correct. Was there any evidence or stipulations made during that hearing? Any evidence? No. I don't believe that the facts were at issue. This is really a notice issue. And the documents speak for themselves when combined with the analysis of the law that exists, the application of the law to the documents that are part of the briefs. There was some question about whether or not the party that was served is actually Alexian Brothers or Alexian Hospital. The lien holder itself, the notice of lien provided to the plaintiff, plaintiff's attorneys and others, set forth who the lien holder was. The lien holder was St. Alexis Medical Center. The notice of motion filed by the plaintiff to adjudicate liens back in 2009 was mailed, titled on the service list, to Alexian Brothers. How did Judge Maris resolve that issue? Judge Maris didn't address that issue. Judge Maris relied upon the Zillinger case to determine that the trial court did not need to acquire personal jurisdiction. I'm happy to either address the interim argument or not as it pleases the court because I believe that personal jurisdiction is required. First of all, you're pleading that you filed in the circuit court on September 13, 2010. What was that brought pursuant to? Why was it filed at that point in time? No. What was the grounds or what was the basis for that motion? It was after 30 days that the judgment had been entered. So what section of the Civil – Section 30 of the Health Care Services Lien Act. The order that was entered in May 5, 2009 adjudicating liens doesn't address – the order itself doesn't say that it's adjudicating St. Alexis Medical Center's lien. So the motion that was filed was, first of all, objecting to jurisdiction, alleging that St. Alexis Medical Center was never – that the court never acquired personal jurisdiction over St. Alexis Medical Center, and secondly, that its lien had never actually been adjudicated. Yet the order referred to both with a slash – excuse me – with a slash between the two names, did it not? It did not. The order did not refer to it. The respondent's – the plaintiff's response brief is the first instance where we've seen that slash appear. It was in their response brief to our motion to adjudicate liens. Did you contemplate filing a 1401 petition? No, you know, Your Honor, we did not believe that – no, we did not contemplate filing a 1401. Perhaps we should have, but we believe that we were attacking this on a personal jurisdiction level and on – also on the level that the lien itself had – the St. Alexis Medical Center's lien had not been adjudicated. The order entered on May 5, 2009 doesn't purport to adjudicate St. Alexis's lien. And if it did, the personal jurisdiction argument can be attacked at any time. If there's a lack of personal jurisdiction over the party, the order entered as to that party is – But that assumes the second part of your argument, that this – to adjudicate a lien under this lien act, that you require a service of summons or something of that nature. And that gets us to what Section 30 says, which, as you concede in your brief, doesn't say anything other than an unpetitioner's written notice to all interested adverse parties without specifying in that statute how that written notice must be done. And your citation of cases under a different lien act, having to do with workers' compensation, where they refer to a different process or instituting proceedings in the language of 820 ILCS 305-5B, is really trying to engraft one requirement from one statute onto a completely different expression of what needs to be done under a different lien statute. I don't – not exactly, because the Workers' Compensation Act is also silent as to how a trial court obtains jurisdiction to adjudicate liens of a workers' compensation lien. And similarly, the Health Care Services Lien Act is also silent as to how that jurisdiction is to be obtained. But you would concede, wouldn't you, that there's a difference between instituting proceedings as an expression and written notice? I mean, conceivably, there's a difference there. That's all I'm asking you. Conceivably, there's a difference there. I suppose conceivably there's a difference. But, Your Honor, also we must bear in mind that Section 30 allows a lien holder to initiate these same proceedings. So if we're going to say written notice is all that's required, and that personal jurisdiction is not required to be obtained by the court, what's to keep a lien holder from filing a petition to adjudicate liens, but never actually serving the injured party with that petition, simply mailing notice? You know, you said that it's silent, but actually 10A is specifically not silent about excluding the Workers' Compensation Act from the provisions of this section. It specifically says that, that every health care professional and health care provider that provides service, except services rendered under the provisions of the Workers' Compensation Act, shall have a lien. So this statute was written to exclude any reference to the Workers' Compensation Act, but those are the two cases that you cite. I don't actually agree with what the exclusion is, that you cannot maintain a health care services lien on a Workers' Compensation recovery. When you filed your petition to, what was it called, petition to adjudicate? Motion to adjudicate. How did you serve? Well, they were already a part of the case. How did you serve them? Because you brought a petition. You just said that you were filing your own petition. We served them pursuant to rule. They were already a party to the action, so we mailed notice. How did you serve them? We mailed notice. All right. So when you filed a petition under the same section of this statute that they relied on, you served them by written notice, and now you're saying that they should have served you with a summary. My client wasn't a party to that proceeding. Really, the petition, you've relied on this petition section to bring this matter before the court, and you're saying now that it's suggested if you're already a party you don't have to be served. I'm not following. Well, Your Honor, Section 2-406 of the code. Did you serve the other lien holders too, like the statute requires? No, we're not seeking to adjudicate their lien. But you're seeking to adjudicate what you believe is your own lien, right? Yes. All right. And it says how that is to be accomplished under Section 30, doesn't it? It does. And what does the section say? Section 30 says, adjudication of rights on petition filed by the injured person or the health care professional or health care provider, and on the petitioner's written notice to all interested adverse parties, the circuit court shall adjudicate the rights of all interested parties and enforce their liens. So you were coming in under this section? Yes. And you gave notice by providing written notice, return receipt requested? We provided notice pursuant to what? To what 30 says. No, Your Honor, 2-406 says that for a new party in a proceeding, which apparently the plaintiff was attempting to make St. Alexia's Medical Center a new party in the proceeding, and process shall be had upon a new party in like manner as is provided for service on the defendant. Well, let me ask you this. You're talking about new parties, but the way you came into this case originally was under the lien act, right? Well, it's also under a lack of personal jurisdiction. No, I mean originally when your office represented St. Alexia's. In other words, you filed, you sent by certified mail notice of your lien. That's correct. That's how you injected your client's interests into this litigation initially. Well, into the matter.  Let's go back to this initial introduction of St. Alexia's Medical Center. The way you became involved was by providing notice of your lien, true? That's true. And you came in under this lien act. That's true. So why are you a new party when you have your lien if you follow the statute? The lien doesn't require there to be any litigation in the first place. The lien acts in the service of a notice of lien. And, in fact, we're never aware there's any litigation. Yeah, but what you're saying is the lien act doesn't require that a complaint be filed or that service of summons be filed, but in order to adjudicate the lien, we have to start a new action. Even though when you came in on your own petition as the health care professional and you gave written notice to the interested adverse party, that being the JACOs, you gave them notice by sending them a letter. Well, Your Honor, you don't need to initiate a brand-new action when there's already an action pending. So why do the JACOs have to initiate a brand-new action? You don't, but they do. They don't need to initiate a brand-new action, but they are filing a motion to adjudicate liens as to a new party. Right. Let's just stop. The court doesn't have jurisdiction. You're conflating two different ideas, I think, respectfully. The idea that Justice McBride is getting at is under the act that you're making a claim, you inject yourself into what we'll just call in broadest terms the controversy by saying, I am entitled to inject my client's interest by sending notice by certified mail. And you do so. And then the party to whom you gave notice, attempting to resolve your claim under this very same act, your saying is required to give a file of action, give notice, a service of summons on you. I am. And, Your Honor, Section 10B of the Lien Act prescribes the manner in which a lien holder is required to serve that notice. And 10B says specifically, service shall be made by registered or certified mail or in person. That language is not there in Section 30. Had the legislature intended that same result? Do we read the sections together? Are we required under the general principles of statutory construction? If the legislature had required personal service by way of summons, could they not have included that language in 30? I think by not including the language the legislature is speaking as to the manner of service is going to be the manner prescribed by the Code of Civil Procedure. But you're adding words to this. You've added words to the schedule. I think adding that service can be made by registered or certified mail when it doesn't say that in Section 30 is adding words. I understand. Isn't it at least, in your view, as likely that the legislature in writing the requirement only for written notice is saying, all right, you have already sent your lien in by certified mail. So now we know you're in the controversy. And if somebody wants to adjudicate that lien, be it you on behalf of the health care provider or the plaintiff in the lawsuit who has made a recovery, now that we know you're both in the lawsuit, now that we know that you have a claim against the recovery, they should give you written notice before it's adjudicated. I mean, what you're saying is, no, once you've injected yourself by way of written notice, somehow it becomes the obligation of either you, not you because you're claiming that they've already partied action, but the obligation of the plaintiff to then say, okay, we all know you're in this lawsuit. And now suddenly written notice is no longer sufficient. Now you've got to go out and serve summons on somebody to adjudicate the lien. It doesn't say that. Certainly it would be helpful if there was some legislative history that spoke as to that, and there's not. But I think that all that, notwithstanding all that and the issue of a personal service, I think that the very reason why the plaintiff was seeking to adjudicate St. Alexia's Medical Center's lien, apparently seeking to adjudicate St. Alexia's Medical Center's lien, is because the plaintiff received this notice of lien, notice of health care provider lien. In their petition, do they not name St. Alexia's Medical Center? In their motion? Yes. They name it in one place. They name Alexia and Brothers somewhere else on the service list. But on the actual petition they named St. Alexia's. The petition they named St. Alexia's. Let's get to the more significant issue here, and that is you said that Judge Maris relied on Zillinger. And Zillinger specifically tells us, and it's based on Illinois state law, that this is not a personal action. It is strictly in rem, and in rem only requires that the service be by registered mail. I don't believe Zillinger says that this instance is in rem. So in the case before the court involving a common law lien, the court held that the action was in rem. That's correct. And it was based on other Illinois state cases. So how do you respond that this is not an in rem action? Well, there are a number of distinctions between this case and a health insurance subrogation. For one thing, in rem cases don't carry with them the note of personal liability that's associated with impersonal type cases. So, for example, in a health insurance subrogation situation, if that personal injury plaintiff never makes any recovery, they're not going to have to turn around and pay the money back to the health insurer. But by contrast, in this situation, not only does the Health Care Services Lien Act recognize in Section 45 that a lien holder has a cause of action for its unpaid charges, but also the case law that's come down, such as Mamedovic v. CTA, which is from this district, recognizes as well that there's this element of personal liability associated. Isn't it really just the opposite? What the Lien Act does is let every health care professional have a lien on the proceeds of a personal injury action. They don't have anything other than a right to the proceeds. And the Lien Act allows the health care provider to always recover the entire amount based upon the contractual relationship that they have with their patients. All the Lien Act does is allow, by statute, the health care provider to attach proceeds, money, not a person. So, I mean, this Act and the cases that are relied upon by Zillinger point out that when you are getting the action, as far as a lien goes, even in common law, was attaching to money, a thing, a thing, not a person. Well, Your Honor, one of the cases relied upon in Zillinger is Bell Federal Savings and Loan, and I don't believe that case stood for the proposition that certainly didn't stand for what Judge Bucklow was asserting. In fact, in that case, the judge found that there was no, the court didn't have jurisdiction, didn't properly acquire jurisdiction, and recognized that every defendant in Illinois is entitled to the best possible notice of a pending action against them. So, Zillinger is different because there's actually, the health insurer in Zillinger actually conceded to having received the notice and chose to ignore it and chose to remove the federal court, a case that was already completed. And Zillinger has been cited in other instances for that, by other courts for that proposition. But Judge Bucklow goes out of her way in a footnote in Zillinger to say that she doesn't believe that the Augsburg and the Free America decisions require different results. And I'm glad that she does point that out because I believe our case is more. Who points that out? Judge Bucklow points it out in a footnote, footnote three. And I believe our case is more like a statutory worker's compensation than it is like a common law health insurance subrogation. And in fact, there's no... What if it isn't like either of them? Let's start with the issue of the answer to the question about now you're in the controversy... Right. Under the Lien Act by sending it by certified mail. And the statute that determines the adjudication of lien doesn't say anything other than written notice. If you want to talk about it from a practical standpoint, Your Honor, we receive these motions to adjudicate. This isn't in the records. From a practical standpoint, we receive motions to adjudicate lien all the time, not even by certified mail. And it's almost always in our client's best interest to show up and not throw procedural process arguments, et cetera, to show up and submit to the jurisdiction of the court. We're not trying to create unnecessary roadblocks. The simple fact of the matter is in this case, had the plaintiff simply relied upon the very notice of lien that caused them to file their motion in the first place, the name of the lien holder, where the notice should be mailed, indeed even the dollar amount, the account number, the dates of service, all that's in the notice and the accompanying cover letter, along with a request saying please let us know if you file a person's injury case in the matter as well. You know, by not filing any transcript, by not providing a bystander's report, you know, this case could be subject to the vouch decision. Are you aware of that? I'm not aware of that. Where if the party who has the burden of proof on an appeal doesn't provide the court with complete transcripts or some kind of bystander's report so that we can determine whether the court abused its discretion, it's basically subject to an affirmance because there hasn't been a sufficient record provided. Okay, I understand what you're saying. I'm just saying as an aside. I don't think that changes, though, our argument that if the plaintiff simply relied upon the very document that caused them to file their motion as to our client in the first place, we wouldn't be here. Well, I think what they relied upon were all those bills that had the different names at the top. Let's talk about the bills for a moment, if I may. The bills contain, they're sent from the hospital to the patient's parents, and it's essentially contained a collection letter asking them to pay the bill along with the bill. And it says Alexian Brothers, St. Alexia's Medical Center. As long as we're talking about a record here, I wouldn't measure it, but Alexian Brothers is in all caps, and it's above it, and it is at least three or four times larger. St. Alexia's Medical Center is below a line and much smaller and not in all caps. And the address that's given is the address, I assume, of Alexian Brothers, which is 1555 Barrington Road, Hoffman Estates. There are multiple addresses on the bill, actually, Your Honor. But that's the one at the heading that tells the people who read it, this is who's sending you this letter. I think an important thing, though, about the bill and the cover letter, one is they were sent prior to the notice of lien, four months prior. They weren't sent to the patient's attorney, they were sent to the patient's parents. It doesn't even have the same balance that the notice of lien has, and the motion to adjudicate liens contains a balance which exactly matches the cover letter and the notice to adjudicate liens. So what we're talking about, they're relying upon a document that their client received to collect the bill. But what we're talking about, sending that bill out is not what gave St. Alexia's Medical Center rights as far as a lien adjudication proceeding. It was sending a notice of lien and complying with the statute. Now, you suggested you have quite a bit of experience adjudicating these medical liens. Would that be a fair comment? I do, I assure you. All right. Well, now, Judge Maddox and Judge Sulganic, I think, was there another judge? They adjudicated these liens in the law division down to zero. And are you suggesting that they wouldn't have adjudicated them down to zero if they thought that service of the process was required by what you're suggesting, a complaint and a summons? Well, interestingly, on a similar matter that came to Judge Maddox through Judge O'Brien prior to when he retired, a similar matter went before Judge Maddox, and Judge O'Brien had ruled exactly that, that actual personal service was required in the case. Judge Maddox ultimately remanded it to Judge Maris, who is the trial judge in this case, and actually decided the case in our favor. So I think that there is at the very least a split at the law division as far as how these issues are being handled, whether personal service is required. And how about a split as to whether this is really an in rem proceeding or? It's the first time I've ever heard of this argument, Your Honor. What? In rem? Yeah. But it is an in rem proceeding? It's the first time I've ever heard that a health care services lien adjudication is an in rem proceeding. Well, does Zillinger say that a common law lien is an in rem proceeding? It appears to say that a subrogation lien of a health insurer is an in rem proceeding. I don't know that extending it beyond the facts of that case is appropriate. I think the in rem case line in Illinois as far as what's in rem versus what's not in rem is very, very limited as far as what's considered to be an in rem proceeding. A few minutes ago you strayed into the realm of the practical. Allow me to do that just for a second here. We have a $30,000 purse here. $10,000 is going to go to the lawyer. You've got $17,000 in bills. That's $27,000. And there's only $3,000 left for the plaintiff. And the plea was here, what these bills should be extinguished because this in no way compensates the plaintiff for the injury and pain and suffering that he suffered. What difference would it have made here? I mean, just for a practical matter. They're saying, you know, we don't have any. Well, for a practical matter, the lien act itself seems in essence guarantees that the patient is going to get walked away with at least 30% settlement. If the liens exceed, if all the liens asserted exceed 40% settlement, the attorney's lien is reduced to 30%. And then the two different classes of lien holders are limited to 20% of the settlement each. So at the very least, the patient is going to walk away with 30% of the settlement, same as her attorney, as a practical matter. I don't know what type of notice was given to the other purported lien holders in this case, one of which was farmer's insurance. That's a subrogation lien. I don't know if a separate deal was worked out with them. I don't have knowledge of any of those facts. But as a practical matter, various lien holders who are properly served with notice and choose not to appear, their liens get adjudicated to zero, and that allows a little bigger piece of the pie usually for the plaintiff. And sometimes for the lien holders who do show up. But it's all statutory as far as the percentages. And as you pointed out actually earlier, by implication, that only talks about what happens to the pot of the $30,000 and doesn't extinguish any other rights one might have. That's true. That is true. Doesn't that sort of suggest to us that what we're talking about here is an attachment to property? Well, the lien itself exists from the time the services are provided. Once the notice of lien is served, it attaches to any prospective recovery. Judgment, settlement, compromise, and then it basically comes into fruition. Does it attach to the JCOs in any way, shape, or form? The lien? Yes. Well, the only manner in which it would attach is in situations where you might have a plaintiff who disregards the requirements of a lien act and obtains the money. A provider may have a cause of action against the plaintiff in a situation such as that. Like a pro se plaintiff, for example, who disregards. Then, yes, there would be an element of personal liability. Doesn't attempt to adjudicate the lien in any way, just takes the proceeds? I guess I don't understand. You're referring to somebody who ignores the lien? Yes. Yeah, it would be. It wasn't ignored in this case. You argue with how it was adjudicated. But here they, at least in your view, you would agree that they at least attempted to adjudicate the lien. Yes. Well, the lien act doesn't prohibit the health care provider from actually going personally against the party who received medical treatment, does it? It doesn't, Your Honor. But I also think it bears mentioning the public policy issues with respect to the lien act. And the concerns that we've got, the Supreme Court in Ingrid v. Cooper points out that liens, such as the Health Care Services Lien Act, promote the, basically allow the health care provider to provide services without regard to ability to pay. Well, they're not sure when they provide those services, A, that there will ever be an action filed, or B, that if it's filed there will be a recovery by the injured party who is receiving the treatment, or even C, that if there is a recovery that it's going to be adequate to cover their bills. That's correct. That's correct. I'm trying to find my quote on this from the State of Cooper. Utilizing liens to protect a hospital's interests promotes the health care for the poor of the state. I think that's important to note because the Supreme Court was interested in how are we protecting the hospital's interests. The lien act doesn't exist as a vehicle to foil the hospital's interests. The lien act exists as a vehicle to protect the hospital's interests, to allow them to be less concerned with how they're going to get their money up front when they're treating, especially in a situation like this, an uninsured, in this situation it was an uninsured patient who simply had a cause of action in the personal injury case. So certainly, yes, there's this other manner in which they could be pursued. I think certainly in this day and age, with the spotlight on hospitals and providers as it is, I think encouraging litigation against accident victims isn't probably where we want to go. Allowing a hospital to rely upon the Health Care Services Lien Act for the proposition that they're actually going to get notice in accordance with their notice of lien that they sent out, they're going to get notice in the same and like manner. If you don't like the personal service argument, at the very least the notice of lien, send notice of lien the way it is on, send notice of your motion the way it's provided on the notice of lien. Well, let me ask you this. Just to kind of wrap up here. The section that talks about adjudicating the rights, it uses the word petition. It doesn't use the word complaint. Petition has a different meaning than complaint. Summons, the word is not used anywhere in the lien act. But give me this rationale again for this section that says on petition filed by the injured person or the health care professional or health care provider, which is what you are. And on the petitioner's written notice to all interested adverse party, the circuit court shall adjudicate. So give me some reasoning here why this petition filed by the health care professional permits written notice as in section 10, like you did, written notice, letter, return, receipt, requested. But this same section has some different meaning for the petition filed by the injured person. Well, I'm not saying it has a different meaning. If, for example, and this happens sometimes. Well, how can we read two different things? I'm trying to get to where how would we write this? Absolutely. How would we write it so that we would say that the health care provider can give written notice as it did in this case to adjudicate its lien, but the injured person can't do that? Maybe I can answer this best by way of an analogy. Something that does happen from time to time is in a situation like this, the injured party, this is involving a minor, but in a situation where perhaps it's not involving a minor, the hospital may initiate a self-paid lawsuit to collect recovery from the injured party. In a situation like that, they're both parties to the proceeding. Sometimes that injured party will have another case, often pending in, for example, law division. Sometimes those cases are consolidated, sometimes not. In a situation like that, written notice would be all that's required with respect to the self-pay case and the lien holder and the injured party. They're already parties to the same proceeding. You provide notice as you would pursuant to Rule 11, for example. But if there was another lien holder out there who was not part of that self-pay action, let's say there's another hospital who didn't sue this person, I believe that then personal service on that other lien holder would be required. But the problem, Mr. Moon, is it doesn't say that. It says written notice to adverse political, adverse interest parties. That's right. Again, when you call about a proceeding, it's not necessarily a lawsuit. This is a proceeding on a lien. Your lien is initiated by certified mail pursuant to the Act. I think it says, okay, now you're in. And now for purposes of this proceeding, you're in. And, therefore, when they say written notice. Well, certainly we can agree that a petition isn't the same thing as a notice of lien. A petition to adjudicate liens carries with it a different connotation than. It's basically a motion to resolve the claim that you have filed. And the way you filed this is not by filing it with the court, but pursuant to the lien Act by sending certified mail. And, again, what you're arguing is we can start this by sending certified mail and inject ourself into this making a claim on whatever pot of money happens to come out of the lawsuit. But if you, who recover that, want to actually adjudicate the claim that we started by certified mail, somehow you have to go out and get a process server to serve summons. Or use the request for waiver of service statutes, which I believe most health care providers and health care professionals would be all too happy with. But you want us to do that with the legislature having created this Act, having multiple sections together, having not put any of this language in 30, and disregard that we have to read all of the provisions together to make sense. So you're asking us to put words in and you're asking us not to consider 10 when we look at 30. But all the cases regarding the statutory construction tell us we have to read all of the provisions together not to have absurd results. And it's sort of almost absurd to say that when you went in on a petition, it was all right for you to give certified mail, but it's not okay for the injured person to use that. That's not really, it doesn't make sense that you went in, gave certified mail notice, but now you're saying the injured party has to do something completely different. Well, I understand your point, Your Honor. And I believe the notice was given in our motion not pursuant to Section 30, but pursuant to Rule 11 that they're already party to the action. So that's why we served notice in the manner that we did. It wasn't pursuant to Section 30, it was pursuant to Section 10B, but it was pursuant to Rule 11. Supreme Court Rule 11. Supreme Court Rule 11. All right, all right. So I apologize. Your interpretation is that you weren't proceeding under 30, but you were using 11 because they were already in the lawsuit. Correct. And we filed an appearance and we rejected ourselves into that lawsuit at the time we filed our motion. But when did the lawsuit end? I mean, didn't the lawsuit end with the purported adjudication over 30 days earlier? Your Honor, thank you. I'm glad you asked that question. The lawsuit, an order was entered on May 1st. It retained jurisdiction, but then it did it in an order which purported to resolve the last pending jurisdictional issue. The May 5th order adjudicated everyone's lean except for San Alexis Medical Center. You're saying because it didn't specifically say San Alexius, it said Alexian Brothers, that we should put on blinders and say that the fact that the bills were sent out in the name of Alexian Brothers, small letters, San Alexius, it's a completely stranger party. I understand that's your position. Not just the bills, I think the whole notice of lien. If we can allow a plaintiff to ignore what is in the notice of lien that's required by statute, there's got to be a reason. Well, let's talk briefly about the fact that something was sent to Alexian Brothers, which is part of this whole network, including San Alexius, practically, right? Yes. And somebody presumably signed for it because it was certified mail return receipt requested, and then they opened it, presumably, and read it, presumably, and saw that it had to do with a lawsuit with somebody who, if they had checked, maybe they did, maybe they didn't, would have known that that's somebody that the hospital group has filed a lien against, and then it went off into the Ethernet. I can't say what happened to that notice. I know that I can't say what happened to it. Well, it's not like they sent it out of state to somebody who's completely a stranger to this. Right. The claiming entity you represent. It's something you make it as a completely different entity, and certainly it's a different corporation, but that's really a question about how separate it is. I think an order that would adjudicate the lien of Alexian Brothers Medical Center is a final order, and it doesn't say adjudicate a lien of Alexian Brothers Medical Center is a different hospital from San Alexius Medical Center. But on the bills, there was certainly evidence to suggest that they were representing themselves to be all one big happy family, weren't they? We're talking about the best. I mean, at the top it says there's a crest, and at the top it says what? It's part of the same network, but we're adjudicating a lien of the health care provider. But the petition itself, the petition to adjudicate the lien itself does in fact say San Alexius Medical Center and is given to one of your agents. It does say San Alexius Medical Center on the petition. It also references in the body. You said the order didn't say that. The order doesn't say that. But the petition does. The petition does. They were asking to adjudicate their lien against your client. But they sent it to Alexian Brothers instead of San Alexius, but when it opens up, the petition says San Alexius. I think if San Alexius, if health care providers in the state can't rely upon the common principle that a notice of a motion to adjudicate liens is going to be sent to the entity named in a notice of lien, then what is the purpose of putting the name of a lien holder in the notice of lien? But they didn't send this to Mercy Hospital. They sent it to your big umbrella company, Alexian Brothers and four times bigger than underneath Medical Center. And one of those agents got it, and the petition itself says San Alexius Medical Center. Let's look at how a health care professional is defined by the lien act. A health care professional or health care provider, which is what we're saying, San Alexius Medical Center, any entity in the following licensed categories, licensed hospital. Alexian Brothers Health Network has never been shown to be a licensed hospital. The licensed hospital is San Alexius Medical Center. So in essence, if we're allowing this notice to be appropriate, we're allowing a notice of a motion to adjudicate liens to be sent to a non-hospital and allow that to adjudicate the rights of a hospital. It was sent to an agent or related entity, and it specifically directed this is about San Alexius Medical Center. There's no mistake in that. Is there any question about that this was an agent that it was served on? It really isn't a question, is it? I haven't made that argument. Well, all right. Let me just go back to finally this notion that the statute itself creates this powerful lien. It gives the health care provider a right to 40% of the proceeds of the personal injury action judgment. And it does so by saying all you have to do is send a letter, return receipt requested or certified mail. It gives this, I mean the statute, not available in common law for a health provider, gives a health care provider this lien and says, guess what, you get this if you, you know, send out a letter, certified mail, return receipt requested. And yet to adjudicate the lien, you're saying there's a greater burden on the petitioner, and that is we need a summons, we need personal service like every other complaint, even though this is called a petition. So I don't think that makes sense to allow a lien to be created, which just automatically gives you 40% of the proceeds by sending a letter, and yet to adjudicate it, it's completely the opposite. With no language in the statute to help us along. It's not an automatic 40%. No, it isn't, but it's a lien. And it's limited to a third. Right, and then the court can adjudicate it, and oftentimes they do right down to zero. Right. But I don't believe it's an absolute. But again, I believe it goes back to due process in an action before a tribunal, and it is a different, yes, it is a different standard for sending a written notice of something according to the dictates of statute that say this is how you're going to send a written notice versus what needs to be present for a tribunal to make a final determination of a party's rights. And you're talking about that's where the buck stops is at the tribunal. You know, the hospital sending the notice of lien doesn't give it an absolute right to recovery. That lien might turn out to be completely unrelated. Who's going to make that determination? Well, the judge will make that determination. And so since it is a higher level, and I don't believe it's sending a written, yes, I'm arguing that it's a higher burden. I think at the very least that notice of lien should be sent to the partner's name and period. On the notice of lien, if there's any confusion with respect to the bills, certainly there's no confusion as far as the language on the notice of lien. But going back to the personal service argument, yes, I'm arguing that personal jurisdiction is required. The court has to acquire that jurisdiction in some manner. Mr. Moon, thank you for a very fine presentation. Thank you. We'll take the matter under advisement.